**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

```
                              :
DONOVAN SMITH,                :
                              :    Civil Action No. 06-2129 (MLC)
          Petitioner,         :
                              :
     v.                       :         OPINION
                              :
MICHAEL CHERTOFF, et al.,     :
                              :
          Respondents.        :
_____  :
```

**APPEARANCES:**

> DONOVAN SMITH, A34 112 132
> Perry County Correctional Center
> Route 2, Box 176, Highway 80 West, Uniontown, Alabama
> Petitioner Pro Se
>
> LEAH A. BYNON, ASSISTANT U.S. ATTORNEY
> CHRISTOPHER J. CHRISTIE, U.S. ATTORNEY
> Newark, New Jersey
> Attorneys for Respondents

**COOPER,** District Judge

Donovan Smith petitioned for a Writ of Habeas Corpus under 28 U.S.C. § 2241 challenging his detention.[1]  Respondents answered, and Petitioner replied.   The Court will dismiss the Petition without prejudice to the filing of another petition in the event that Petitioner's removal is not reasonably foreseeable.

**BACKGROUND**

Petitioner, a Jamaican citizen, challenges his detention by the Department of Homeland Security ("DHS").  He was born in

---

[1] Petitioner, who was confined at the Monmouth County Correctional Institution in New Jersey when he filed the Petition, has been transferred to a facility in Alabama.

Jamaica on April 20, 1968.  His mother immigrated to the United States on August 5, 1968, and became a United States citizen in 1974.  Petitioner was admitted to the United States on February 2, 1975 as an immigrant.

Between 1985 and 1998, Petitioner was convicted of, <u>inter alia</u>, robbery, criminal possession of a controlled substance, resisting arrest, attempted burglary, criminal mischief, and criminal trespass.  In January 1999, immigration officials took Petitioner into custody when he was released from a New York prison and served a Notice to Appear for removal, based on his convictions.

On May 31, 2000, United States Immigration Judge William Van Wyke granted Petitioner's motion to terminate removal proceedings on the ground that the government had not proved that he was an alien, rather than a United States citizen.  On November 14, 2000, Petitioner was released from custody on his own recognizance.  On January 17, 2002, the Board of Immigration Appeals remanded the matter to the Immigration Judge for further proceedings, finding that Petitioner had not rebutted the presumption, which arose due to his birth in Jamaica, that he was a Jamaican citizen by a preponderance of credible evidence.

The Immigration Judge, when Petitioner failed to appear on September 25, 2002, ordered Petitioner removed to Jamaica in absentia.  On November 30, 2005, the Fugitive Operations Unit of

the DHS apprehended Petitioner.  Petitioner filed a motion to reopen and for a stay, which were denied on January 4, 2006.

On February 1, 2006, Petitioner filed a petition for review in the United States Court of Appeals for the Second Circuit. See Smith v. Immigration and Naturalization Service, No. 06-0486. Petitioner moved for a stay of removal, and on March 14, 2006, the Court of Appeals granted a temporary stay of removal until further order of the Court.  The DHS moved to dismiss.  On August 29, 2006, the Court of Appeals granted the motion to dismiss the petition for review on the ground that Petitioner's claims were not exhausted before the Board of Immigration Appeals, and denied Petitioner's motion for stay of removal.

The Clerk of this Court received this Petition under 28 U.S.C. § 2241 on May 8, 2006.  Petitioner argues that he has been detained for more than six months and his removal to Jamaica is not reasonably foreseeable.  Petitioner contends that his detention is not statutorily authorized and violates due process. He seeks release with an order of supervision.  On June 9, 2006, the Court ordered the DHS to file an answer.[2]

---

[2] On June 9, 2006, this Court ordered Petitioner to either pay the $5 filing fee or apply for in forma pauperis status, and notified him that the Petition would be dismissed if he failed to respond within 30 days.  On August 1, 2006, mail sent by the Clerk to Petitioner was returned as undeliverable.  On August 18, 2006, this Court administratively terminated this action for failure to respond.  But Petitioner then filed a notice of change of address.  This Court then reopened the case.

DHS argues that Petitioner's detention is statutorily authorized and does not violate the Zadvydas holding, as he challenged his removal by filing a petition for review and the Court of Appeals for the Second Circuit granted a stay of removal.

Petitioner replied and filed an Appendix.  He argues that his removal to Jamaica is not imminent because he is a United States citizen, having derived citizenship from his mother, and the Jamaican Consulate will not issue a travel document until his petition for review has been adjudicated.  Petitioner further argues that his prolonged detention violates the Fifth Amendment.

**DISCUSSION**

**I.   Legal Standard**

Habeas jurisdiction "shall not extend to a prisoner unless . . . [h]e is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3).  A federal court has jurisdiction under § 2241 if:  (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490 (1989). This Court has jurisdiction here because Petitioner was detained within its jurisdiction in INS custody at the time he filed his Petition, see Spencer v. Kemna, 523 U.S. 1, 7 (1998), and he asserts that his detention is not statutorily authorized and violates his constitutional rights.  See Bonhometre v. Gonzales,

4

414 F.3d 442, 445-46 (3d Cir. 2005) (stating district courts still have habeas jurisdiction over alien's challenge to detention).

## II.  Legality of Detention

The Immigration and Nationality Act ("INA") authorizes the United States Attorney General to issue a warrant for the arrest and detention of an alien pending a decision on whether the alien is to be removed from the United States.  See 8 U.S.C. § 1226(a). It also mandates detention during removal proceedings for a limited class of criminal aliens, including inadmissible criminal aliens.  See 8 U.S.C. § 1226(c).  § 1226(c) states:

(c) Detention of criminal aliens

(1) Custody

The Attorney General shall take into custody any alien who–

(A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,

(B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (d) of this title,

(C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

(D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title,

when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

(2) Release

The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides

5

> pursuant to section 3521 of Title 18 that release of the
> alien from custody is necessary to provide protection to
> a witness, a potential witness, a person cooperating
> with an investigation into major criminal activity, or
> an immediate family member or close associate of a
> witness, potential witness, or person cooperating with
> such an investigation, and the alien satisfies the
> Attorney General that the alien will not pose a danger
> to the safety of other persons or of property and is
> likely to appear for any scheduled proceeding.  A
> decision relating to such release shall take place in
> accordance with a procedure that considers the severity
> of the offense committed by the alien.

8 U.S.C. § 1226(c).

Mandatory detention of criminal aliens during removal proceedings is a constitutionally permissible part of the removal process.  "[T]he statutory provision at issue governs detention of deportable criminal aliens pending their removal proceedings. Such detention necessarily serves the purpose of preventing deportable criminal aliens from fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed."  Demore v. Kim, 538 U.S. 510, 527-28 (2003).

Once an alien is ordered removed, the Attorney General is required to remove him from the United States within a 90-day "removal period."  See 8 U.S.C. § 1231(a)(1)(A).  Section 1231(a)(2) requires the Attorney General to detain an alien during this 90-day removal period:

> During the removal period, the Attorney General shall
> detain the alien.  Under no circumstance during the
> removal period shall the Attorney General release an
> alien who has been found inadmissible under section

6

> 1182(a)(2) or 1182(a)(3)(B) of this title or deportable
> under section 1227(a)(2) or 1227(a)(4)(B) of this title.

8 U.S.C. § 1231(a)(2); <u>see</u> <u>Zadvydas v. Davis</u>, 533 U.S. 678, 683 (2001).

If the DHS does not remove the alien within the 90-day removal period, then § 1231(a)(6) authorizes the Attorney General to either release, or continue to detain, the alien.  Thus:

> An alien ordered removed who is inadmissible under
> section 1182 of this title, removable under section
> 1227(a)(1)(C), 1227(a)(2), or 1227(a)(4) of this title
> or who has been determined by the Attorney General to be
> a risk to the community or unlikely to comply with the
> order of removal, may be detained beyond the removal
> period and, if released, shall be subject to the terms
> of supervision in paragraph (3).

8 U.S.C. § 1231(a)(6).

Section 1231(a)(6) does not allow the Attorney General to detain aliens indefinitely beyond the removal period, but "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States." <u>Zadvydas</u>, 533 U.S. at 689.  But "once removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." <u>Id.</u> at 699.  Six months is the "presumptively reasonable period" of post-removal-period detention. <u>Id.</u> at 701.  "After this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to

rebut that showing.  And for detention to remain reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." Id.

The Supreme Court has held that the post-removal-period detention of two inadmissible Cuban aliens who had not effected "entry" was no longer statutorily authorized by § 1231(a)(6) because removal to Cuba was not reasonably foreseeable.  See Clark v. Martinez, 543 U.S. 371, 384 (2005).  The aliens "were detained well beyond six months after their removal orders became final," and the government "brought forward nothing to indicate that a substantial likelihood of removal subsists despite the passage of six months (indeed, it concedes that it is no longer even involved in repatriation negotiations with Cuba)." Id. at 386.  Under those circumstances, the Court held that the petitions should have been granted.  Id.

Petitioner argues here that his detention is governed by 8 U.S.C. § 1231(a)(6), as interpreted by Zadvydas and Clark v. Martinez.  Specifically, he asserts that he has been detained since November 30, 2005, it has been more than six months, and his detention is not authorized under Zadvydas because there is no significant likelihood of removal to Jamaica in the reasonably foreseeable future.  Petitioner contends that Jamaica will not issue a travel document until the Second Circuit adjudicates his

petition for review, as the issue there is whether Petitioner is a United States citizen.

Contrary to Petitioner's contention, Petitioner's 90-day removal period did not begin until August 29, 2006, when the Court of Appeals for the Second Circuit dismissed his petition for review and denied his motion for a stay of removal.  See 8 U.S.C. § 1231(a)(1)(B)(ii).  This is because the 90-day removal period does not begin until the latest of several events occurs. See 8 U.S.C. § 1231(a)(1)(B).  Specifically, § 1231(a)(1)(B) provides that

> [t]he removal period begins on the latest of the following:
>
> (i) The date the order of removal becomes administratively final.
>
> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order.
>
> (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement.

8 U.S.C. § 1231(a)(1)(B).

Section (ii) applies here, as Petitioner's removal order was judicially reviewed by the Court of Appeals for the Second Circuit, which ordered a temporary stay of Petitioner's removal. Thus, under § 1231(a)(1)(B)(ii), Petitioner's removal period began on August 29, 2006, when the Second Circuit dismissed his petition for review.  See Hendricks v. Reno, No. 06-4248, 2007 WL 760403 (3d Cir. Mar. 14, 2007); Vasquez v. Immigration & Customs

Enforcement, 160 Fed. Appx. 199 (3d Cir. 2005); Wang v. Ashcroft, 320 F.3d 130, 147 (2d Cir. 2003).  The presumptively reasonable six-month period under Zadvydas to effectuate removal did not expire until February 28, 2007.  The issue presented to this Court in the Petition and litigated by the parties is different from the issue which this Court must decide.  Petitioner argues that his detention since November 30, 2005, is not statutorily authorized by § 1231(a)(6), but the issue now is whether his detention since February 28, 2007, violates Zadvydas.  Because nothing before this Court shows that Petitioner's detention since February 28, 2007, is unreasonable under Zadvydas, this Court will dismiss the Petition.  However, the dismissal is without prejudice to the filing of another petition (in the appropriate venue) in the event that there is no significant likelihood of removal in the reasonably foreseeable future.

### CONCLUSION

The Court will dismiss the Petition without prejudice.


  s/ Mary L. Cooper
**MARY L. COOPER**
United States District Judge